if he refuses to answer pertinent questions, it is the misfortune of the party that he is obliged to call a witness entertaining such views.

It is further insisted that the error did no harm, because there is sufficient evidence of the plaintiff's adultery, aside from the testimony of the co-respondent. While this may be so, we cannot say the error was harmless and that the court did not take into consideration the testimony which should have been rejected.

The judgment should be reversed and a new trial granted, with costs to the appellant to abide the event. All concur.

---

(92 App. Div. 513.)

### THYLL v. NEW YORK & L. B. R. CO. et al.

(Supreme Court, Appellate Division, First Department. March 25, 1904.)

1. CARRIERS—FREIGHT—CONTRACT LIMITING LIABILITY—EFFECT.

A contract for the carriage of goods, providing that the carrier should not be liable for any loss or damage by change in weather, heat, frost, wet, or decay, did not relieve the carrier from liability for damage caused by negligence, but did impose on the owner the burden of establishing that injury from wet was caused by the carrier's negligence.

2. SAME—CONNECTING CARRIERS—NEGLIGENCE—EVIDENCE.

In an action against connecting carriers for damage to goods, evidence introduced by plaintiff that one of the carriers delivered the goods to the other at a certain station "in good order and condition," together with allegations of the complaint that such station was under the control of the latter carrier, absolved the former from liability.

3. SAME—DELIVERY TO CONNECTING CARRIER—CONDITION OF GOODS—EVIDENCE—WAIVER OF OBJECTION.

Where, in an action against connecting carriers for damage to goods, a letter from the initial carrier to plaintiff reciting delivery of the goods to the final carrier "in good order and condition" was introduced without objection on the part of the final carrier, the latter could not afterwards object that the letter was not competent evidence against it.

4. SAME—NEGLIGENCE—EVIDENCE—SUFFICIENCY.

In an action against connecting carriers for damage to goods, evidence *held* sufficient to justify a finding of negligence on the part of the final carrier.

5. SAME—REFUSAL TO DELIVER—LIABILITY.

Where a carrier, though having the consignee's goods in its possession at the point of delivery, refuses, on demand, to make delivery, it renders itself liable for any damage which the goods may thereafter sustain.

Appeal from City Court of New York.

Action by Lillian M. Thyll against the New York & Long Branch Railroad Company and the Pennsylvania Railroad Company. From a determination of the Appellate Term reversing a judgment of the City Court for plaintiff, and granting a new trial (84 N. Y. Supp. 175), plaintiff appeals. Affirmed in part, and reversed in part.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Theodore T. Baylor, for appellant.

Robert Thorne, for respondent New York & Long Branch Railroad Company.

A. Leo Everett, for respondent Pennsylvania Railroad Company.

McLAUGHLIN, J.   This action was brought to recover damages to personal property alleged to have been caused by defendants' negligence.  The plaintiff had a verdict in the City Court, and from the judgment entered thereon defendants appealed to the Appellate Term, where the judgment was reversed and a new trial ordered, and by permission the plaintiff appeals to this court.

At the trial it appeared that in May, 1901, the plaintiff shipped from Berlin, Germany, to the city of New York, a hamper of goods, consisting mostly of linen articles.  When the hamper arrived at New York, it was sent to the Public Stores; and after an examination there it was, on the 5th of July, delivered by an express company acting for the plaintiff to the defendant the Pennsylvania Railroad Company for transportation to Elberon, N. J., a station on the line of the defendant the New York & Long Branch Railroad Company.  The Pennsylvania Railroad Company transported the hamper to Elberon, N. J., and on the 6th of July delivered it to the defendant the New York & Long Branch Railroad Company, in whose possession it remained until the 25th of July, when it was delivered to the plaintiff; and then, upon an examination, the contents were found to be wet, mildewed, and damaged to the extent for which a recovery was had.

The contract under which the hamper was transported by the Pennsylvania Railroad Company provided that no carrier or party in possession thereof should "be liable for any loss thereof or damage thereto  *  *  *  by changes in weather, heat, frost, wet or decay," but this provision, of course, did not relieve the defendants from liability if the goods were damaged through their negligence. It did, however, impose upon the plaintiff, before she could recover, the burden of establishing that the injury to her property was the result of defendant's negligence.   Draper v. Presdt., etc., D. & H. C. Co., 118 N. Y. 118, 23 N. E. 131;  Platt v. Richmond R. Co., 108 N. Y. 358, 15 N. E. 393.   There is nothing in the record which would justify a finding to the effect that the Pennsylvania Railroad Company was negligent in any respect as to the transmission of the goods from New York to Elberon, N. J., or in the delivery of the same there to the New York & Long Branch Railroad Company.   The proof is uncontradicted to the effect that the hamper was delivered to the Pennsylvania Railroad Company on the 5th of July, and by it transported and delivered to the New York & Long Branch Railroad Company, at its station at Elberon, early in the morning of the 6th of July, and while in the possession of the Pennsylvania Railroad Company it was at all times under cover, protected from the weather, and properly cared for.  Not only this, but the plaintiff offered in evidence a letter, which was received without objection by either of the defendants, in which a representative of the Pennsylvania Railroad Company stated to the plaintiff, prior to the commencement of the action, that the hamper was delivered by the Pennsylvania Railroad Company at the Elberon station to the defendant the New York & Long Branch Railroad Company "in good order and condition." This, taken in connection with the allegation of the complaint to the effect that the station at Elberon was at the time in question under the control and management of the New York & Long Branch

Railroad Company, its agents and servants, would seem to absolve the Pennsylvania Railroad Company from all responsibility as to damage to plaintiff's property. If I am right in this, then it necessarily follows that the Appellate Term was right in reversing the judgment and ordering a new trial so far as the Pennsylvania Railroad Company was concerned.

As to the New York & Long Branch Railroad Company a different question is presented. The letter referred to, written by the Pennsylvania Railroad Company to the plaintiff, and which was received in evidence without objection, tended to establish that the goods were in good condition when delivered at Elberon. This letter was admitted without qualification, and it does not now lie with the New York & Long Branch Railroad Company to insist that the letter was not competent evidence against it. The letter was proof of a material fact. It was evidence in the case, and as such the jury were bound to give it consideration. A material fact may sometimes be proved by other than strictly legal evidence. As said in Crane v. Powell, 139 N. Y. 384, 34 N. E. 912:

"When proof is offered to establish it that is not of the quality or character required by law, and it is not objected to, the other party is deemed to assent to another mode of proof of an inferior or secondary nature."

Here the plaintiff, by a declaration of a representative of the Pennsylvania Railroad Company, sought to establish the condition of the goods at the time they were delivered at Elberon. The New York & Long Branch Company did not then see fit to object to such mode of proof so far as it was concerned, and it cannot now be heard to question the method adopted, or the force of the evidence adduced for that purpose.

We have, therefore, evidence sufficient to sustain a finding to the effect that the goods were in good condition when they were received by the New York & Long Branch Railroad Company, and the remaining inquiry is whether there is any evidence to the effect that they were thereafter injured through its negligence. Bearing upon this question, the plaintiff proved that the hamper was at that station on the 6th of July; that thereafter she called several times and inquired for it, on each occasion being informed by the representative in charge that it was not there, and she was not, in fact, able to get it until the 25th of that month. In the meantime it appeared that the hamper was placed in a small freighthouse, which stood "in a hollow, on stilts," which, although it did not leak, had large sliding doors opening opposite each other to the weather; that during the time the hamper remained in the freighthouse it was rainy, and the atmosphere was heavy with moisture; and it is at least inferable from the evidence that the goods could have been injured by reason of such moisture. I think these facts were sufficient to justify a finding of negligence. The proof showed that the goods were in good condition when delivered at Elberon, and they were thereafter damaged; the only reasonable explanation given as to the cause of such damage being the excessive moisture in the atmosphere. If it had delivered the goods to plaintiff when she first called for them—if this were the cause of the damage—it can fairly be assumed they would not

have been injured. The plaintiff was entitled to her goods when she called for them, and the New York & Long Branch Railroad Company having refused to make such delivery rendered it liable for any damage which the goods might thereafter sustain. McKinney v. Jewett, 90 N. Y. 267; Faulkner v. Hart, 82 N. Y. 413, 37 Am. Rep. 574.

It follows that the determination of the Appellate Term, in so far as it relates to the Pennsylvania Railroad Company, should be affirmed, with costs to it, and judgment absolute entered in its favor, in pursuance of stipulation; and, in so far as it relates to the New York & Long Branch Railroad Company, the same should be reversed, with costs, and the judgment and order of the City Court affirmed, with costs. All concur.